# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ACNR RESOURCES, INC.,**
**Employer Below, Petitioner**

**FILED**
**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-41**       (JCN: 2025002712)

**JARED MCGINNIS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner ACNR Resources, Inc. ("ACNR") appeals the January 5, 2026, order of the Workers' Compensation Board of Review ("Board"), which added patellar tendinopathy as a compensable condition in this claim; granted the treatment requests for twelve sessions of physical therapy, an MRI of the right knee, and a re-evaluation with Dr. Sismondo; authorized temporary total disability ("TTD") benefits; and granted the request for a right knee distal patellar tendon debridement and repair. Respondent Jared McGinnis filed a response.[1] ACNR did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On December 14, 2024, Mr. McGinnis presented to the Wheeling Hospital emergency department stating an object struck his lateral right knee while he was working and caused him to fall. He stated he was having difficulty walking and flexing the knee due to pain but denied numbness or tingling. He also reported a history of bursa surgery in the same knee. The emergency department performed an x-ray, but it was unremarkable. The clinical impression was a right knee strain, and Mr. McGinnis was given a knee immobilizer. On that same date, Mr. McGinnis filed an Employees' and Physicians' Report of Occupational Injury or Disease stating he was injured when a high-pressure hose blew off and struck his right knee. The physician's portion of the report of injury was completed

---

[1] ACNR is represented by Aimee M. Stern, Esq. Mr. McGinnis is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq.

1

by medical personnel at Wheeling Hospital's emergency department and stated Mr. McGinnis suffered a right knee strain as a result of an occupational injury.

On December 16, 2024, Mr. McGinnis was seen by Charles Milton, D.O., and reported stiffness, swelling, and difficulty flexing his right knee as well as medial joint space pain. Dr. Milton's impression was a lateral knee contusion, right knee effusion, medial collateral ligament sprain with concern for Grade 2 or higher, and he could not rule out a meniscal tear. He recommended an MRI and stated Mr. McGinnis was unable to work because of the potential for a ligament injury. On December 19, 2024, Mr. McGinnis returned to Dr. Milton for a follow-up appointment and reported a slight improvement in flexion but it was still limited. Dr. Milton noted that Mr. McGinnis' right knee was less swollen, but he was still experiencing medial joint discomfort. He was to remain off work and follow up once the MRI was completed.

On December 20, 2024, the claim administrator held the claim compensable for a sprain of an unspecified site of the right knee. On January 11, 2025, an MRI of Mr. McGinnis' right knee was performed at Wheeling Hospital. John L. Defilippo, M.D., interpreted the image to show soft tissue changes anterior to the patella and patellar ligament that could be posttraumatic hemorrhagic in nature, but Dr. Defilippo noted that the exact etiology was uncertain. When Dr. Milton saw Mr. McGinnis on January 13, 2025, he reviewed the recent MRI interpretation and stated the findings were consistent with the mechanism of injury. Dr. Milton noted that Mr. McGinnis did not have full range of motion and was experiencing pain and recommended physical therapy. The impression was lateral anterior knee contusion, contusion to the patella, and contusion sprain of the patellar ligament, but Dr. Milton noted the knee effusion was improving.

Mr. McGinnis received an initial physical therapy evaluation on January 14, 2025, at Wheeling Hospital outpatient physical therapy, and Aaron White, PT, determined that Mr. McGinnis would benefit from physical therapy to address his pain, decreased range of motion, and decreased strength and functional limitations. On January 29, 2025, and February 10, 2025, Mr. McGinnis was seen by Dr. Milton for follow-up appointments and reported improvements since attending physical therapy. However, Mr. McGinnis reported medial knee discomfort when going up and down stairs that worsened with movement of the patella across the femoral condyles, and he was unable to squat beyond fifty degrees. Dr. Milton's impression was a knee contusion with persistent symptoms of patellofemoral dysfunction, and he stated that Mr. McGinnis had plateaued with therapy and needed an orthopedic assessment. Mr. McGinnis was directed to continue physical therapy, remain off work, and follow up in two weeks.

On February 24, 2025, Mr. McGinnis was seen by Ronald Sismondo, M.D., at Wheeling Hospital Sports Medicine Clinic who assessed right knee distal patellar tendonitis versus contusion with MRI changes in distal tendon and tibial tuberosity and right knee pain with joint line tenderness and positive McMurray maneuver, which was

concerning for an occult meniscus tear. On February 26, 2025, and March 12, 2025, Mr. McGinnis was again seen by Dr. Milton for follow-up appointments. At the March appointment, Dr. Milton's impression was lateral anterior right knee contusion, contusion of the patella, contusion sprain of the patellar ligament, and he noted that Mr. McGinnis' knee effusion had essentially resolved. He stated that Mr. McGinnis agreed that his symptoms were significantly better, but his improvement had plateaued. On March 14, 2025, Mr. McGinnis was discharged from physical therapy and reported he had improved overall but continued to experience some knee/patellar pain with climbing stairs and ladders.

On March 18, 2025, Mr. McGinnis was seen at the Wheeling Hospital emergency department for exacerbating right knee pain after returning to work the day before. He reported tenderness of the right knee and walked with a limp, but his knee was not erythematous or swollen. Mr. McGinnis was discharged with a diagnosis of a right knee injury, sequela. On March 21, 2025, Dr. Milton saw Mr. McGinnis, who reported that he attempted to return to work without restrictions on March 17, 2025. Mr. McGinnis said he developed anterior right knee pain and was unable to perform his work duties but denied a new injury. After his examination, Dr. Milton's impression was exacerbation of right anterior knee pain, history of contusion of the patella, patellar tendinitis, and quadriceps and hamstring weakness. He noted that a previous MRI indicated no internal derangement at that time. The physical findings appeared to be extra-articular in the extensor tendons, and the etiology was not clear.

On March 25, 2025, Prasadarao B. Mukkamala, M.D., performed an independent medical examination at the request of the claim administrator. Dr. Mukkamala noted that Mr. McGinnis complained of pain in the right knee with prolonged standing, pain when bending the right knee, and felt he did not have full strength. After his examination, Dr. Mukkamala diagnosed a strain/contusion to the right knee and concluded that Mr. McGinnis had reached maximum medical improvement ("MMI") and did not require any additional diagnostic studies or treatment. Dr. Mukkamala further opined that there was no indication to repeat the MRI, as recommended by Dr. Milton, or the platelet rich plasma injection to the right knee and arthroscopic surgery for the right knee, as recommended by Dr. Sismondo. Dr. Mukkamala concluded that Mr. McGinnis did not have any permanent impairment resulting from the compensable injury.

On March 28, 2025, the claim administrator denied Dr. Milton's request for authorization of twelve sessions of physical therapy, an MRI of the right knee, and a re-evaluation with Dr. Sismondo based on Dr. Mukkamala's March 25, 2025, report, which found that Mr. McGinnis had reached MMI from his injury. On March 31, 2025, the claim administrator suspended Mr. McGinnis' TTD benefits based on Dr. Mukkamala's determination that he was at MMI and closed the claim for TTD benefits on May 8, 2025. Mr. McGinnis protested these orders.

On April 9, 2025, Dr. Sismondo saw Mr. McGinnis for a follow-up appointment. Mr. McGinnis reported that he continued to experience weakness in his right leg, was unable to stand out of a kneeling position, and was unable to lift himself out of a lunge position. This caused pain and discomfort over the anterior aspect of the knee. He also reported that his knee felt unstable occasionally. Mr. McGinnis continued to follow up with Dr. Milton. During a visit on May 14, 2025, Dr. Milton noted Mr. McGinnis continued to have weakened quadricep strength and was unable to return to work at that time.

In his May 22, 2025, progress notes, Dr. Sismondo noted that Mr. McGinnis had right knee pain with joint line tenderness medially, good range of motion, good quadriceps activation, and significant tenderness overlying the tibial tuberosity and distal patellar tendon. He noted that Mr. McGinnis had overall thickening of the bursa in the anterior aspect of the knee and assessed distal patellar tendinopathy of the right knee. Mr. McGinnis stated he believed he exhausted his conservative options and wanted to pursue surgery. Dr. Sismondo advised that, given the presentation and pathology, he believed Mr. McGinnis would most benefit from right knee distal patellar tendon debridement and repair. He would also plan for a diagnostic knee arthroscopy.

On June 4, 2025, the claim administrator denied the request from Dr. Milton for a right knee distal patellar tendon debridement and repair based on Dr. Mukkamala's March 25, 2025, report. Mr. McGinnis protested this decision. On June 18, 2025, Dr. Milton signed a Diagnosis Update form stating Mr. McGinnis' primary diagnosis was a contusion of the patella and his secondary diagnosis was patellar tendinopathy. The form did not state how these diagnoses related to the compensable injury. On July 25, 2025, the claim administrator denied patellar tendinopathy as a secondary compensable condition in this claim, and Mr. McGinnis again protested this decision.

On June 27, 2025, Mr. McGinnis was deposed and testified that he was employed by ACNR as a roof bolter on a continuous miner on December 14, 2024, when a high-pressure hose blew off, and the metal end struck him in his right knee. When he attempted to return to work on March 17, 2025, his right knee swelled, he experienced pain, and he was unable to climb or perform his job duties. He testified that he had still not returned to work and experienced constant, nuisance-like pain. He stated that he was unable to climb or push up on his legs, which is a required part of his job. Prior to the compensable injury, Mr. McGinnis testified that he had not experienced right knee problems since 2017, when he underwent surgery. After that surgery, he went through physical therapy, was released to return to work, and did not undergo any treatment for his right knee until the current injury occurred on December 14, 2024.

On August 4, 2025, Ronald J. Fadel, M.D., issued a report detailing his record review, as requested by ACNR. Dr. Fadel noted that the January 11, 2025, MRI documented residuals of the 2017 injury because the observed fibrosis anterior and in the area of the patellar tendon were not those which would be expected to be seen from lateral

4

joint blunt trauma in less than a month. He stated that the thickening perceived by Dr. Sismondo over the anterior aspect of the patellar tendon pre-dated the compensable injury and related to the 2017 injury and subsequent bursectomy because a direct blunt injury of the pre-patellar space and the redeveloped anterior patellar bursa did not occur in the December 14, 2024, incident. He stated that records were unavailable for the seven-year time frame between the 2017 surgery and the 2024 compensable injury, and it is unknown if Mr. McGinnis was symptomatic or required medical attention for his right knee during that period.

Dr. Fadel further stated that the scarring and fibrosis anterior to the patella/patellar tendon was appropriately anticipated in 2018 by Raymond Drabicki, M.D., who performed the surgery. Dr. Fadel stated that the record included some of the original orthopedic surgeon's clinical and operative notes which repeatedly referenced the enormity of Mr. McGinnis' pre-patellar bursa in 2017. Aside from the hazards of seroma or unrecognized hemorrhage accumulation, Dr. Fadel opined that a large cavity, even when managed well, would be associated with the development of considerable scar formation in the operative region over time.

Dr. Fadel stated that all of these considerations led him to conclude that the pathology for which Dr. Sismondo recommends surgical debridement is entirely related to the work injury in 2017 and that this conclusion is also objectively supported by the MRI, which was performed less than a month following the work incident. Dr. Fadel further opined that the injury in 2017 was compounded by Mr. McGinnis' tobacco use, high BMI, and questionable use of knee pads over the past seven years. Dr. Fadel stated that he would have great reluctance to proceed with the proposed surgery. He opined that Mr. McGinnis is at high risk for a protracted, complicated recovery or even a poor result from a somewhat elective surgical intervention for a remote, long-standing problem. His inclination would be to maximize conservative management free of further soft tissue violation. Dr. Fadel also opined that Mr. McGinnis did not sustain a contusion of the patella and/or patellar tendinopathy as a result of his compensable injury and stated Mr. McGinnis sustained a blunt force injury to the lateral aspect of his knee, which did not include the anterior aspect of the knee joint, the physical location of the patella and patellar tendon.

On August 12, 2025, Dr. Sismondo performed a right knee distal insertional patellar tendon debridement and repair, a right knee arthroscopic medial plica excision and debridement of the infrapatellar fat pad, and a right knee arthroscopic medial femoral condyle chondroplasty. The postoperative diagnoses were right knee distal patellar tendinopathy, right knee medial plica and hypertrophied adherent infrapatellar fat pad, and right knee medial femoral condyle unstable chondral flap resulting in underlying Grade 4 chondromalacia.

In addition, the parties submitted records related to Mr. McGinnis' 2017 right knee injury. On April 24, 2017, Dr. Drabicki noted that Mr. McGinnis fell directly on the anterior

aspect of his right knee at work and had a history of a prepatellar bursitis in the contralateral knee that required surgical excision. Dr. Drabicki's impression was right knee traumatic prepatellar bursitis with hematoma, and he performed a right knee injection/aspiration. On September 11, 2017, Mr. McGinnis was seen for a follow-up appointment and fluid had reaccumulated after both the aspiration and corticosteroid injection, which was performed in May of 2017. The right knee bursa was aspirated that day, and the plan was for excision of the large prepatellar bursa. On September 18, 2017, Dr. Drabicki performed a right knee excision of the prepatellar bursa and both the pre- and post-operative diagnosis was right knee recurrent prepatellar bursitis.

Dr. Drabicki saw Mr. McGinnis from October 5, 2017, to January 17, 2018, and noted that Mr. McGinnis had difficulty post-operatively because the bursa was large and out of character of a normal bursal excision. He noted that Mr. McGinnis' scar was two to three times the length of a normal bursa because the removal was extensive and it left a dead space. Mr. McGinnis reported that when he kneeled for greater than an hour and forty-five minutes, at times, he would experience a lot of pain and sensitivity on the anterior aspect of the knee. As of his last examination, Dr. Drabicki was unsure if Mr. McGinnis would be able to return to underground mine work.

On January 5, 2026, the Board reversed the claim administrator's March 28, 2025, May 8, 2025, June 4, 2025, and July 25, 2025, orders and granted the request to add patellar tendinopathy as a compensable condition in this claim; granted the request for twelve sessions of physical therapy, an MRI of the right knee, and a re-evaluation with Dr. Sismondo; authorized TTD benefits for the period in which Mr. McGinnis submits evidence showing that he was temporarily and totally disabled as a result of the injury; and granted the request for a right knee distal patellar tendon debridement and repair. It is from this order that ACNR now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;

6

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). In *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), the Supreme Court of Appeals of West Virginia ("SCAWV") held that:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022).

On appeal, ACNR asserts two assignments of error, and we will consolidate the consideration of these assignments of error for clarity. First, ACNR argues the Board erred in adding patellar tendinopathy as a secondary compensable condition and approving its related treatment based on Dr. Milton's Diagnosis Update form and Mr. McGinnis' deposition testimony stating he did not experience these symptoms following his 2017 knee injury and surgery. Specifically, ACNR argues that Dr. Milton's Diagnosis Update form failed to explain how this condition related to the compensable injury. For its second assignment of error, ACNR argues the Board erred in finding Dr. Fadel's opinions to be based on incomplete evidence and unpersuasive. Instead, ACNR argues that Dr. Fadel provided the only detailed explanation regarding the causation of Mr. McGinnis' patellar tendinopathy and was the only physician who reviewed the medical records related to Mr. McGinnis' 2017 right knee injury and surgery. We disagree. "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *see also* W. Va. Code § 23-4-1(a) (2008). Further, the procedure for adding a condition to the claim is the same as the standard that applies when determining compensability. *Miller v. Dynamic Energy, Inc.*, No. 21-0206, 2022 WL 4299290, at *4 (W. Va. Sept. 19, 2022) (memorandum decision).

In this case, the Board held that Dr. Milton's request to add patella tendinopathy indicates that his opinion is that this condition was causally related to Mr. McGinnis'

7

workplace injury. The Board further relied on Mr. McGinnis' testimony stating he experienced no pain or symptoms in his right knee after his 2017 surgery, and he continued to work at full duty until the current workplace injury occurred. The Board stated that although Dr. Mukkamala determined Mr. McGinnis had reached MMI and noted his prior knee surgeries, he did not review any of the 2017 medical records from Dr. Drabicki. Further, the Board noted that although Dr. Fadel wrote a detailed report opining that Mr. McGinnis' current condition was not related to the compensable injury, he admitted he did not know anything about Mr. McGinnis' condition in between the 2017 surgery and the 2024 injury. Thus, the Board found that the opinions of Drs. Mukkamala and Fadel were based on incomplete information and were not persuasive.

To summarize, the appendix record contains no evidence that Mr. McGinnis sought treatment for the 2017 injury after he was released by Dr. Drabicki in 2018, Mr. McGinnis testified that his right knee was asymptomatic prior to the compensable injury in this claim, Mr. McGinnis worked full duty until 2024, and the medical records show that after the 2024 injury, Mr. McGinnis' right knee was consistently symptomatic and in need of ongoing treatment and surgery. Therefore, pursuant to *Moore*, patella tendinopathy is an appropriate compensable condition in this claim.

As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in adding patellar tendinopathy as a compensable condition in this claim. As the Board noted, since patellar tendinopathy is found compensable, Mr. McGinnis is entitled to treatment for the condition. We cannot conclude that the Board was clearly wrong in granting the request for twelve sessions of physical therapy, an MRI of the right knee, a re-evaluation with Dr. Sismondo, and the request for a right knee distal patellar tendon debridement and repair. Further, due to the additional treatment required for patellar tendinopathy, we cannot conclude that the Board was clearly wrong in finding that Mr. McGinnis was prematurely deemed to be at MMI and that the closure of the claim for TTD was also premature.

Accordingly, we affirm the Board's January 5, 2026, order.

Affirmed.

**ISSUED:** August 6, 2026

8

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White